WILLIE PALMER v. THE STATE.

No. 22884. Delivered June 7, 1944.
Rehearing Denied January 10, 1945.

The opinion states the case.

*M. C. Culbertson* and *Jno. A. Storey,* both of Vernon, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of twenty-five years.

The State's evidence, briefly stated, shows that the appellant, his wife and another negro woman, lived in a small shack in the negro section of the town of Vernon; that next to his home and within four feet thereof there lived another negro with three children. On the night in question, some friends visited the home of the appellant and entertained them with some music. Sometime in the early morning hours appellant was awakened by some one hollering, "Fire." He discovered that his home was in flames and hurriedly made his exit in his underwear. His neighbor was aroused from his slumbers, took his children from his home, threw out his bedding and some wearing apparel and then left the house. They soon discovered that the appellant's wife and the other negro woman were missing. After the building had burned down and the fire extinguished, the firemen found the charred bodies of the two negro women

and also two dogs. The appellant's wife had a hole in her sinus about the size of a .38-caliber bullet, and some blood had coagulated therein, which indicated that she was alive at the time the hole in her forehead was made. It was shown that appellant owned a small caliber pistol but that he had pawned it to his neighbor for the sum of two dollars on the afternoon prior to the fire. The neighbor placed the pistol between two mattresses on his bed and it was later found out in the yard where he had thrown the mattresses. The doctor who made the autopsy testified that he would not swear that the hole in the forehead was made by a bullet but said that he thought it was. He also testified that he made an analysis of the spot of blood found on the appellant's undershirt, which appeared to be Type No. 3, while that of the appellant was Type No. 4. There is no evidence from any source that the pistol had ever been fired.

Appellant testified that on the night in question, the musician and his wife had some differences and he slapped her, making her nose bleed; that when he (appellant) undertook to separate them he got some blood on his hand and on his clothes.

The deceased, at the time her body was discovered, was sitting in a chair, while the body of the other woman was lying on the floor. It further appears from the record that the parties had engaged in some drinking on the premises that evening just prior to the fire.

It will thus be noted that the State relied entirely upon circumstantial evidence. We have grave doubts as to the sufficiency of the evidence to justfy and sustain the appellant's conviction of the offense of murder. See Branch's Ann. Tex. P. C., p. 1042, sec. 1877.

Bill of Exception No. 2, complains of the following remarks made by the County Attorney in his argument to the jury:

"Gentlemen of the Jury: The witnesses, Alice and another musician were here, present at the last term of court and I talked to them and I know what both will testify, and I am not afraid to put them on the witness-stand."

Appellant objected to this argument and requested the court to instruct the jury not to consider it for any purpose. The court promptly responded to the request but appellant contends that notwithstanding the instruction the argument was not based on any evidence introduced on the trial; that it was an unsworn statement of the County Attorney and was highly

prejudicial to his legal rights. We think there is some merit in his contention. Appellant had testified that the witness, Alice, and the other musician became engaged in a quarrel and that the musician struck her, making her blood flow freely from her nose and that he (appellant) undertook to separate them, and in doing so, he got blood on his hands, shirt and pants; that the blood which was discovered on his shirt came from one of the absent witnesses who was struck in the nose. There is no evidence from any source that the parties did not engage in a fight, nor that as a result of the difficulty her nose bled and appellant, in his attempt to separate them, had gotten blood on his clothes. The County Attorney, in his statement to the jury, impliedly contradicted this testimony of the appellant. That such statement was material and hurtful is quite obvious, and we do not believe that the action of the court in instructing the jury not to consider it entirely eliminated the same from their minds. He stated that he had talked to the witnesses and told the jury that he knew what they would testify to and that he was not afraid to put them on the stand, which was in effect, telling them that the two witnesses had told him that they did not have a fight, and that there was no bloodshed on the night in question. Hence appellant's statement that he got blood on his clothes from one of the absent witnesses was untrue.

Prosecuting attorneys should confine themselves in argument to the evidence upon the trial and not bring outside influence to bear upon the jury in order to obtain a conviction. The accused is entitled to a fair trial without reference to any influence other than the evidence and seasonable inferences to be deduced therefrom. See Davis v. State, 55 S. W. 340.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The District Attorney has filed a vigorous motion for rehearing insisting that if the argument of the county attorney was improper the prompt action of the court in withdrawing same from the jury cured any error in the matter. A number of cases are referred to in support of the motion.

Particular cases are of little aid in solving a question here presented. In dealing with alleged improper arguments and the effect of their withdrawal from the jury general principles may be stated, but after all, the argument, to cause a reversal, must not only be improper, but must be of a material character, *and calculated under the circumstances of the particular case to injure the accused.* Todd v. State, 93 Tex. Cr. R. 553, 248 S. W. 695. It was said in Gatlin v. State, 113 Tex. Cr. R. 247, 20 S. W. (2d) 431:

"It is the duty of this court, and the due and proper administration of justice demands, that not the words alone shall control, but, in estimating the argument of which there is complaint upon appeal, the nature of the offense, the evidence adduced, and the verdict rendered, are essential elements."

It follows that the same argument under certain circumstances would not be improper, or might be withdrawn, whereas, under other circumstances a contrary rule would obtain. In applying the principles suggested to the present case the entire record before us should be considered. It must be remembered that the case is one of circumstantial evidence, and to say the least, the opinion and conclusions drawn and testified to by the expert witness are most unusual.

There was found upon appellant's clothes blood spots. Appellant testified that two musicians, a man and his wife, were at his house on the night of the alleged homicide; that they became involved in a fuss; that the husband slapped the wife, causing her nose to bleed, and in separating them appellant got blood on his clothes. It was the State's contention that the blood on appellant's clothing was from his own wife from a wound inflicted on her by him after the musicians had left appellant's house. The blood on appellant's clothing was one of the strongest circumstances against him. These musicians had been present at a prior term of court but were not present at the instant trial. Under the circumstances stated the County Attorney in his opening argument told the jury that he had talked to the musicians at the previous term of court, knew what they would testify, and that he was not afraid to put them on the witness stand. This was a clear intimation to the jury that, if present, the testimony of the absent musicians would be favorable to the State. The record shows that if appellant killed his wife, as claimed by the State, these musicians were not then present. Therefore, the only evidence they could give favorable to the State would be to deny that any quarrel or fight occurred between them at appellant's house, and that no blood from either

of them got on appellant's clothing. It occurs to us that such is the clear intimation in the argument of what the witnesses would testify. Under the facts and circumstances here present we are unwilling to say that even the prompt effort on the part of the court to obviate the harm by withdrawing the argument was availing.

We pretermit a discussion of the sufficiency of the evidence. The facts are unusual and have given the court much concern. In the event of another trial either the State or appellant may be able to supplement the expert evidence upon which the conviction largely depends.

In the original opinion we find one expression which is not entirely accurate. We said "The appellant's wife had a hole in her sinus about the size of a .38 caliber bullet." This hole did not penetrate the sinus; it was in the forehead just above the bridge of the nose, and was only about one-quarter of an inch in depth. Blood had collected in the sinus, which the doctor testified resulted from the blow. The blood was not exposed to the air, and was coagulated in the sinus.

The State's motion for rehearing is overruled.