**Affirmed and Memorandum Opinion filed January 31, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00899-CR

---

**CODY WAYNE HENSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court
Fort Bend County, Texas
Trial Court Cause No. 10-DCR-053551**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Cody Wayne Henson of aggravated robbery and assessed punishment at twenty years' confinement. Appellant challenges his conviction in two issues, arguing that the evidence is legally insufficient to support his conviction and the trial court erred by limiting his cross-examination of one of the State's witnesses. We affirm.

# I.    BACKGROUND

The complainant, 72-year-old Robert Toney, testified that he began barbequing at a friend's house at about midnight on December 13, 2009. He drove his truck back to his house at about 5:00 a.m. to pick up some supplies. When he was about a block from his house, he saw three young men walking down the street in the opposite direction. Toney testified that two of these men were appellant and J.R., a juvenile.

Meanwhile, Toney's neighbors who lived across the street, Loretha and Tari Darden, heard a car alarm go off at about 5:00 a.m. They went to their window that faced Toney's house. Tari saw a man running across the street from Toney's house towards the Dardens' house and cut through the right side of their yard.[1] Then Tari saw Toney's truck approaching his driveway, and Toney backed his truck into his driveway so the front faced the street. Toney got out and went to the bed of the truck.

Loretha testified that she saw two men walking around the corner of her house, and they were talking to each other. These men were later identified as appellant and J.R. Both of the Dardens testified that they had seen the two men running together toward Toney. Loretha testified that both of the men began "tussling with [Toney], his car door was open and they were tussling right there, one of them grabbed him." Both of the Dardens testified that the two men separated: J.R. stayed with Toney, and appellant opened the passenger door and was "going through the car." Tari testified that appellant never tussled with Toney, but both of the men ran towards Toney, and "as they get to the driver's side, front corner of the truck, [J.R.] ran to the back to get Mr. Toney, [appellant] ran to the passenger door."

---

[1] The identity of this person is unknown.

2

Toney testified that he was reaching into a cooler in the bed of his truck when J.R. put a gun to Toney's head and said, "Give it up, school." J.R. reached into Toney's pockets and took $109. J.R. said, "Oh, I'm not finished with you yet." Toney was scared and thought he would be killed. He saw appellant inside the passenger side of his truck, but appellant never approached him or made any statements to him. Appellant was "going through the cab of [Toney's] truck, pulling out papers and stuff and raising the mats."

J.R. told Toney to lie down on the ground, but before he could comply, Tari Darden approached with a gun and fired two shots into the air. Tari told J.R. to take the gun away from Toney's throat. J.R. was hesitant and said things such as, "We can work this out, bro, say bro, we can work." J.R. held the gun down, put it in his pocket, and then put his hands in the air. Toney ran away from J.R. Tari testified that appellant "stayed froze" in the truck, but Toney testified that appellant ran to the back of the truck when Tari fired the gun. Meanwhile, Loretha had called the police, and Toney's daughter had come outside after hearing the gunshots.

Tari told appellant and J.R. to lie down on the ground. They complied, and Tari searched them. Tari found a handgun in J.R.'s pocket. It was a cocked semi-automatic pistol with a round in the chamber. Tari and other eyewitnesses testified that Tari un-chambered the round.[2] Tari then asked appellant, "Where's the other gun, I know you got one." Appellant responded, "No, he has the only gun." Tari searched appellant and did not find a gun. According to Tari, appellant was reacting "like, 'Man, damn, man, man,' like, we got caught, like, man, how did that happen." Houston Police Department officers arrived within minutes, arrested appellant and J.R., and took statements from several witnesses.

---

[2] An officer testified, however, that the officer unloaded the gun.

3

Appellant testified that he was visiting a girl's house down the street from Toney's house on the morning of the robbery. He claimed that he was walking down the street with a friend named Jonathan when he saw a global positioning system in Toney's truck as Toney drove by. Appellant intended to steal the system from Toney's truck, so he waited until Toney had parked and left the driveway before approaching the passenger door and searching the vehicle. He testified that he was by himself, and he was surprised to see J.R. in the driveway. He did not know what J.R. was doing there. Appellant had seen J.R. at the girl's house, but appellant testified that he did not know J.R. very well; he did not know J.R. would be there; and he did not discuss the robbery with J.R. or help him. Finally, he acknowledged that his testimony conflicted with that proffered by Toney and the Dardens.

The jury charge authorized conviction based on party liability. *See* Tex. Penal Code Ann. §§ 7.01–7.02 (West 2011). The jury found appellant guilty of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2011). He was sentenced to twenty years' confinement.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is legally insufficient "to prove that he intentionally or knowingly committed the offense of aggravated robbery." Appellant acknowledges that an aggravated robbery occurred,[3] but he claims that he did not participate as a party to the crime that J.R. independently

---

[3] "A person commits robbery if, 'in the course of committing theft . . . and with intent to obtain or maintain control of the property,' he 'intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.'" *Wyatt v. State*, 367 S.W.3d 337, 340 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd) (quoting Tex. Penal Code Ann. § 29.02(a)(2) (West 2011)). "A person commits aggravated robbery if he commits robbery and 'uses or exhibits a deadly weapon.'" *Id.* (quoting Tex. Penal Code Ann. § 29.03(a)(3)). A firearm is a deadly weapon. *Id.* (citing Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2011)).

4

committed.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Wyatt v. State*, 367 S.W.3d 337, 340 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *Id.* We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.* "'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Temple v. State*, No. PD-0888-11, — S.W.3d —, 2012 WL 6861531, at *18 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"A person is a criminally responsible party to an offense 'if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.'" *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting TEX. PENAL CODE ANN. § 7.01)). "A person is criminally responsible for the conduct of another if, acting 'with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.'" *Id.* (quoting TEX. PENAL CODE ANN. § 7.02).

"To determine whether an individual is a party to an offense, the reviewing court may look to 'events before, during, and after the commission of the offense.'" *Id.* (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App.

5

1977)). "A court may also rely on circumstantial evidence to prove party status." *Id.* "There must be sufficient evidence of an understanding and common design to commit the offense." *Id.* "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts [is] sufficient to support the conviction under the law of parties." *Id.* Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Arnott v. State*, 498 S.W.2d 166, 177 (Tex. Crim. App. 1973) ("Of course, in the technical sense, knowledge (or criminal intent), being an intangible, can only be proved by circumstantial evidence."). A defendant's mere presence at the crime scene, "without more, is insufficient to support a conviction as a party to the offense." *Gross*, 380 S.W.3d at 386.

Viewing the evidence in the light most favorable to the verdict, as we must, the evidence is sufficient for a rational jury to find beyond a reasonable doubt that appellant was criminally responsible for the aggravated robbery. The jury could rationally disbelieve appellant's testimony and believe other witnesses' testimony. Their testimony establishes that Toney saw appellant and J.R. walking down a street together away from Toney. Appellant and J.R. necessarily changed direction, walking together, to follow Toney's truck. Then Loretha Darden saw appellant and J.R. walking and talking together in front of her house, across the street from Toney's house. When Toney got out of his truck and went to the rear, the Dardens saw appellant and J.R. run across the street toward Toney, still together. J.R. held a gun to Toney's head and throat while appellant searched the truck. Toney, with a gun to his head, could see appellant searching the truck. Further, appellant acknowledged that his intent for searching the truck was to commit a theft.

6

This evidence shows much more than mere presence at the scene. It shows appellant's active participation in the aggravated robbery. There is ample circumstantial evidence for the jury to rationally conclude that appellant and J.R. had an understanding and common design to commit the offense of aggravated robbery. *Cf. Sigler v. State*, No. 04-02-00301-CR, 2003 WL 22047226, at *4 (Tex. App.—San Antonio Sept. 3, 2003, pet. dism'd) (mem. op., not designated for publication) (evidence sufficient based on law of parties when a codefendant held store patrons at gunpoint and the defendant took the store's property).

Appellant's first issue is overruled.

### III. LIMITATION ON CROSS-EXAMINATION

In his second issue, appellant contends that the trial court "abused its discretion when it refused to allow the defense to cross examine Tari Darden regarding Darden's criminal history and his violation of the Tex. Penal Code, Section 46.04." Appellant claims that he was wrongfully prevented from inquiring into three issues while cross-examining Tari: (1) a felony criminal conviction; (2) Tari's "criminal record," which included "aggravated assault with a deadly weapon, allegations of sexual assault, sodomy and kidnapping"; and (3) "the fact that he was in possession of a firearm in violation of . . . Tex. Penal Code § 46.04."

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion. *See Lahood v. State*, 171 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Lucas v. State*, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989)). We will not disturb the trial court's ruling if it lies within the zone of reasonable disagreement. *Mendez v. State*, No. 14-04-00024-CR, 2005 WL 1089408, at *4 (Tex. App.—Houston [14th Dist.] May 10, 2005, no pet.) (mem. op., not designated for publication).

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." TEX. R. EVID. 608(b). Texas Rule of Evidence 609 authorizes a party to attack a witness's credibility with evidence that the witness has been convicted of a crime if (1) that crime was a felony or involved moral turpitude; and (2) the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party. TEX. R. EVID. 609(a); *LaHood*, 171 S.W.3d at 620. Such evidence is not admissible if more than ten years have elapsed since the date of the conviction or the release from confinement, whichever is later, unless the probative value substantially outweighs the prejudicial effect. TEX. R. EVID. 609(b); *LaHood*, 171 S.W.3d at 620.

## A. Felony Criminal Conviction

On direct examination, Tari testified in front of the jury that he was put on probation in 1998 for an aggravated assault, his probation was revoked, he went to prison for five years, he was released in 2004, and he finished his parole in May 2009. Appellant told the trial court that he wanted to "explore that ag assault." The trial court allowed appellant to clarify with Tari that a firearm was the weapon involved in the 1998 assault. The trial court indicated its belief that the "other facts of the conviction, I think are not fair game."

Under Rules 608 and 609, "the details of the conviction are generally inadmissible for the purpose of impeachment." *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see also Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986); *Murphy v. State*, 587 S.W.2d 718, 722 (Tex. Crim. App. 1979). On appeal, appellant urges that "if the trial court had allowed the questions of Darden, such testimony would have been admissible for

8

credibility purposes." However, appellant does not articulate what questions he should have been allowed to ask. More important, appellant did not advise the trial court of the additional details regarding Tari's conviction that he wanted to explore. Appellant made no offer of proof regarding the underlying facts of Tari's conviction as required to preserve error for review. *See, e.g.*, *Love v. State*, 861 S.W.2d 899, 900–01 (Tex. Crim. App. 1993); *see also* TEX. R. EVID. 103; TEX. R. APP. P. 33.1.

## B.     Assault and Allegations of Criminal Conduct

As previously discussed, Tari testified in front of the jury that he was convicted of aggravated assault involving a firearm. He also testified outside the jury's presence that he received a bad-conduct discharge from the military in 1997, and he served four months of pretrial confinement based on charges of assaulting a staff member, rape, and sodomy. A jury found him not guilty of rape and sodomy. Accordingly, those two charges did not result in a conviction admissible under Rule 609. *See* TEX. R. EVID. 609; *see also, e.g.*, *Moreno v. State*, 22 S.W.3d 482, 485–86 (Tex. Crim. App. 1999) ("Rule of Evidence 609 permits only evidence of convictions, and Rule 608(b) does not allow specific instances of a witness's conduct to be proved or inquired into on the issue of credibility."). Appellant failed to demonstrate an exception to this general rule, both in the trial court and on appeal.[4]

Tari testified outside the jury's presence that a jury found him guilty of misdemeanor assault in 1999. However, appellant failed to establish, or even argue, that the misdemeanor assault was a crime involving moral turpitude to bring

---

[4] Evidence of an unadjudicated crime may be admissible to show a witness's bias or interest in the particular case, *see Moreno*, 22 S.W.3d at 486, or to refute a false impression, *see House v. State*, 909 S.W.2d 214, 216 n.2 (Tex. App.—Houston [14th Dist.] 1995), *aff'd*, 947 S.W.2d 251 (Tex. Crim. App. 1997).

it within the scope of Rule 609. The record contains no evidence about the sex of the complainant in the misdemeanor assault case, and generally, "misdemeanor assaultive offenses which do not involve violence against women are not crimes involving moral turpitude." *Patterson v. State*, 783 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd), *quoted in Chambliss v. State*, No. 14-10-00035-CR, 2011 WL 665323, at *2 (Tex. App.—Houston [14th Dist.] Feb. 24, 2011, pet. ref'd) (mem. op., not designated for publication).

Assuming for argument's sake that the conviction involved moral turpitude, more than ten years had elapsed since the date of the conviction.[5] Evidence of the conviction was inadmissible under Rule 609(b) unless "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b). Appellant failed to make this showing in the trial court and on appeal.

## C. Violation of Section 46.04 of the Penal Code

Appellant contends that "such evidence would be relevant to attack Darden's credibility for truthfulness and the fact that Darden fabricated his testimony and took the law into his own hands in violation of Tex. Penal Code, section 46.04."[6] The trial court would have been correct to deny admission of this evidence because it was a specific instance of conduct offered to challenge witness credibility as forbidden by Rule 608. There is no evidence that Tari was convicted of the offense, and thus, it is not admissible under Rule 609. *See, e.g.*, *Moreno*, 22

---

[5] The date of trial is the controlling date for determining whether ten years have elapsed, not the date of the offense. *See Davis v. State*, 545 S.W.2d 147, 150 (Tex. Crim. App. 1976); *Buffington v. State*, 801 S.W.2d 151, 154 (Tex. App.—San Antonio 1990, pet. ref'd).

[6] Section 46.04 makes it unlawful for a convicted felon to possess a firearm under certain circumstances. *See* TEX. PENAL CODE ANN. § 46.04.

S.W.3d at 485–86.[7]

Regardless, appellant waived this contention. The State raised the issue by a motion in limine before opening arguments, and the following colloquy occurred:

> THE COURT: You can talk about the discharge being illegal, you can, you know, that kind of thing. But, what he's asking for is for you to come forward and advise the Court that you want to go into the fact that he even had a firearm in his hand is, in fact—is a criminal offense.
>
> DEFENSE COUNSEL: So, it's okay for me to make reference to the discharge—
>
> THE STATE: At the discharge—
>
> DEFENSE COUNSEL: —being [un]lawful and—
>
> THE STATE: At the discharge.
>
> DEFENSE COUNSEL: —just not accusing him of, you know, being a felon in possession of a firearm. I think that's what you're—
>
> THE STATE: That—that is my position, Cary, yes.
>
> DEFENSE COUNSEL: You know, I guess I can live with that.
>
> THE COURT: Okay. All right. Then I'm going to grant it—
>
> DEFENSE COUNSEL: Unless something, you know, something—
>
> THE COURT: Then I'm going to grant it—I'm going to grant it. And all that does is mean if you feel like you, later on, need to get into it, everybody approach first and we'll huddle about it before we make any attempt to go forward. Okay. All right.

The huddle referenced by the court never occurred because appellant never asked the court to admit any additional evidence about Tari's possession of a firearm. It was incumbent upon him to do so to preserve error. *See Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). "A trial judge's grant or denial of a

---

[7] To the extent appellant contends he was prevented from putting on evidence concerning the incident, we note that the jury was indeed told that Tari was a convicted felon, he was carrying a firearm, he discharged the firearm, and discharging a firearm is illegal unless done in the protection of a person or property.

motion in limine is a preliminary ruling only and normally preserves nothing for appellate review." *Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003).

Appellant's second issue is overruled.

## IV. Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/          Sharon McCally
             Justice

Panel consists of Justices Boyce, McCally, and Mirabal.[8]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[8] Senior Justice Margaret Garner Mirabal sitting by assignment.